# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LINDA PERKINS-MOORE, ESQ,

    Plaintiff,

v                                                   No. 21-10929
                                                 Judge

CITY OF DETROIT a Municipal Corporation,
POLICE CHIEF JAMES CRAIG, INV. SAMUEL
QUICK, INV. MAKEEBA JAMES, INV LAWRENCE
AKBAR, SGT. MEGAN GASSAWAY-WALLS
#s-535, LT. GERALDINE Atkinson #0024, OFC
TIMOTHY VERNON #4431 and OFC DONALD
ROSS #4064

    Defendants.

| THE MICHIGAN LAW FIRM, P.C. | CHERYL L. RONK (P54897) |
|---|---|
| Racine Michelle Miller (P72612) | City of Detroit Law Department |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 199 Pierce, Ste 202B | 2 Woodward Avenue, Suite 500 |
| Birmingham, MI 48009 | Coleman A. Young Municipal Center |
| (844)464-3476 | Detroit, MI 48226 |
| racine@themichiganlawfirm.com | (313) 237-5237 |
| | Ronkc@detroitmi.gov |

## Notice of Removal of Civil Action

Under 28 U.S.C. § 1441, Defendant City of Detroit removes this civil action predicated upon the following:

1. On March 8, 2021, Plaintiff commenced this action in the Third Judicial Circuit of Michigan. This action is now pending before that court.
2. Defendant City of Detroit was served with the summons and complaint on or about April 22, 2021. The above entitled action is a civil suit for alleged civil rights violations in which Plaintiff seeks compensatory and punitive damages, allegedly arising, in part, from a violation or deprivation of rights under the United State Constitution, as more fully appears in the copy of the Complaint attached to this notice.
3. This Court has original jurisdiction of the above-entitled action under 28 U.S.C. § 1331 and removal of the action to this Court is proper under 28 U.S.C. § 1441(a).
4. Under 28 U.S.C. § 1441(c) this action is removed in its entirety to this Court.
5. Copies of all process, pleadings, and orders served upon the Defendant in this matter are attached.
6. This notice is timely, having been filed within thirty days after service of Summons and Complaint upon the Defendant.
7. The undersigned has prepared a written notice of the removal of this action. Such notice has been provided to counsel for Plaintiff and to the clerk of the court from which this matter is removed. Promptly after filing this Notice of Removal of Civil Action, the undersigned will file a copy with the clerk of the court from which this action is removed, and provide a copy to counsel of record by efiling.

8. Based upon the authorities and facts recited above, Defendant removes the above-entitled action to this Court.

Respectfully submitted

/s/ *Cheryl L. Ronk*
Cheryl L. Ronk (P54897)
Senior Assistant Corporation Counsel
City of Detroit Law Department
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 500
Detroit, Michigan

Dated:     April 26, 2021

## Certificate of Service

The undersigned certifies that on April 26, 2021, she served the foregoing papers upon the above named counsel of record by efiling and by email.

/s/ *Cheryl L. Ronk*

STATE OF MICHIGAN
IN THE THIRD JUDICIAL CIRCUIT COURT
FOR THE COUNTY OF WAYNE

LINDA PERKINS-MOORE, ESQ.

    Plaintiff,

v

Case No: 21-CZ
Hon:

CITY OF DETROIT, a Municipal Corporation,
POLICE CHIEF JAMES CRAIG, INV. SAMUEL QUICK
INV. MAKEEBA JAMES, INV LAWRENCE AKBAR,
SGT. MEGAN GASSAWAY-WALLS #S-535, LT. GERALDINE
ATKINSON #0024, OFC. TIMOTHY VERNON #4431 and
OFC. DONALD ROSS #4064,

in their individual and official capacities,

    Defendants.

---

THE MICHIGAN LAW FIRM, PC
Racine Michelle Miller (P72612)
Attorneys for Plaintiff
199 Pierce, Ste 202B
Birmingham, MI 48009
Ofc: (844) 464.3476
racine@themichiganlawfirm.com

---

No civil action between these same parties arising out of the transaction or occurrence alleged in the Complaint has been previously filed in this Court

/s/ Racine M. Miller
--------------------
**RACINE MICHELLE MILLER (P72612)**

### PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, LINDA PERKINS-MOORE, Esq., by and through her attorneys The Michigan Law Firm, PC, by Racine Miller, and for her Complaint and Jury Demand against Defendants, states unto this Honorable Court as follows:

## INTRODUCTORY AND JURISDICTIONAL STATEMENTS

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and under the statutes and common law of the State of Michigan against these named defendants in their individual capacities and/or official capacities and against the City of Farmington Hills, Michigan. It is alleged that Defendants, while acting under color of law and in the scope and course of their employment as police officers, wrongfully arrested, assaulted and battered Plaintiff, employed excessive force against the Plaintiff, and acted with grossly negligent conduct toward her, and/or violated her rights under federal law, Michigan statutory law and common law, and her Constitutional rights.

## PARTIES AND VENUE

2. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

3. Linda Perkins-Moore, Plaintiff, was at all times relevant a resident of the City of Detroit, County of Wayne, State of Michigan.

4. Defendant City of Detroit is a Municipal Corporation incorporated under the laws of the State of Michigan.

5. Defendant Chief James Craig was at all times relevant the City of Detroit official with final policymaking authority relevant hereto.

6. Defendants Inv. Samuel Quick, Inv. Makeeba James, and Inv. Lawrence Akbar were at all times relevant to this Complaint, investigators employed by the City of Detroit, acting under color of law, and within the scope of authority and course of their employment.

7. Defendants Sgt. Megan Gassaway-Walls S-5358th Pct. and Lt. Geraldine Atkinson #0024 were at all times pertinent, supervisors of officers Veronon and Ross, employed by

the City of Detroit, acting under color of law, and within the scope of authority and course of their employment.

8. Defendants Ofc. Timothy Vernon #4431 and Ofc. Donald Ross #4064 were police officers for the City of Detroit, employed by the City of Detroit, acting under color of law, and within the scope of authority and course of their employment.

9. As to the negligent conduct of the Defendants, it is alleged that the Defendants caused injuries to Plaintiff while acting in the course of employment or service or on behalf of their governmental employer and:

    a. Defendants were acting or reasonably believed that they were acting within the scope of their authority,

    b. the governmental agency was engaged in the exercise or discharge of a governmental function, and

    c. the Defendants' conduct amounted to gross negligence that was the proximate cause of the injury or damage.

10. As to the intentional torts of the Defendants, it is alleged that:

    a. The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his/her authority,

    b. the acts were undertaken with lack of good faith, or were undertaken with malice, and

    c. the acts were ministerial and not discretionary.

11. The amount in controversy exceeds Twenty-five Thousand ($25,000.00) Dollars.

12. All events, transactions, or occurrences pertinent hereto, occurred within the County of Wayne.

13. Upon information and belief, the individual Defendants reside in the County of Wayne, State of Michigan.

14. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

15. The complained-of conduct arises from a traffic stop at Woodbine and Grand River made in Detroit on October 14, 2019, between the hours of 16:30 and 17:30 (hereinafter "the incident.").

16. Defendant officers Vernon and Ross were travelling southbound on Grand River in Detroit, a ways behind Plaintiff Perkins-Moore, a licensed African-American attorney, who was lawfully driving her vehicle, a Mercedes.

17. Ofc. Vernon was driving with Ofc. Ross as passenger.

18. All parties were stopped at a red light at Grand River and Telegraph.

19. Officers Vernon and Ross discussed between themselves and agreed to pull over Plaintiff.

20. Officer Vernon queried Plaintiff's license plate number through the National Crime Information Center's datebase, and allegedly yielded a stolen vehicle result.

21. As the red light turned green, Officer Vernon changed lanes, and drove directly behind Plaintiff, activating the scout car's emergency lights and followed Plaintiff, who drove into the far right lane of Grand river.

22. Officers Vernon and Ross each affected a traffic stop by using the lights and sirens of the Department Vehicle ("scout car".)

23. Plaintiff pulled over to the furthest edge of the throroughfare.

24. Officer Vernon approached Plaintiff's driver's side while Officer Ross approached by the passenger side.

25. Officer told Plaintiff her car was stolen, and asked her to step out of the vehicle, which she did.

26. Officer Vernon placed handcuffs on the Plaintiff, detaining her.

4

27. Officers Vernon and Ross each conducted an unreasonable search and seizure of Plaintiff and her vehicle.

28. Officer Vernon directed Plaintiff to stand, handcuffed, in the middle of the street, in front of the scout car in view of the dash cam, which she did.

29. Officer Ross walked away from Officer Vernon and Plaintiff, and entered the scout car, and used the mobile computer.

30. Officer Ross returned to where Vernon and Plaintiff were standing in the road, and said, "it's registered."

31. Officer Vernon then asked, "It's registered to her?" to which Officer Ross answered, "Yeah."

32. Officer Vernon then went to the driver side of the scout car, leaving Ross and Plaintiff in the road.

33. Officer Ross continued to tell Plaintiff her car was stolen, and began to question her.

34. Officer Vernon reconvened with the Plaintiff and Officer Ross, still standing in the road, and said, "That's a Texas license plate."

35. Upon realizing the mistake, Officer Vernon removed the handcuffs from Plaintiff.

36. As Plaintiff returned to her vehicle, Officer Ross followed her, and at this time asked for her driver's license "to say that we've talked to you today."

37. Plaintiff complied, giving over her registration, license, proof of insurance, while crying and visibly upset, expressing how upset and embarrassed she was.

38. Officer Vernon took the requested documents as Ross walked away and as an additional scout car arrived.

39. Officer Ross gave the thumbs up and returned to Plaintiff's vehicle.

40. Officer Ross then took Plaintiff's documents from Officer Vernon and told the other officers, who were standing at the scout car, "It's good. It's good. It's a Texas license plate. It just come up stolen. So, when we looked harder, it just said Texas"

41. He told the officers he did not understand why he received information on a Texas license plate since her ran the license plate number for Michigan.

42. The additional unit left without speaking to Plaintiff or Officer Vernon.

43. Officer Ross then checked the Plaintiff's driver's license through LEIN, returned her documents to Officer Vernon, who was still standing at the driver side of Plaintiff's vehicle.

44. Officers Vernon and Ross entered the scout car.

45. Officer Ross said to Officer Vernon, "My bad, dude. I've never seen it come up on a different state like that."

46. Officer Ross has since resigned from the department.

47. Officer Vernon replied that "I'll show you how you can verify.

48. Plaintiff filed a Citizen's Complaint with the Detroit Police Department on November 21, 2019.

49. On January 15, 2020, at 1:54 p.m., Plaintiff was interviewed by Detroit Police Commission Investigator, Makeeba James.

50. Ms. Perkins-Moore complained that 2 white officers pulled her over without probable cause.

51. Ms. Perkins-Moore complained that she was unlawfully stopped, removed from her vehicle, handcuffed, and made to stand in the middle of a busy thoroughfare in front of a fully marked patrol car with its lights on.

52. Ms. Perkins-Moore complaint that when she asked why she was being pulled over and whether she was under arrest, the officers responded, "We don't know yet. We're going to see how things work out."

53. Ms. Perkins-Moore, a black woman riding in a Mercedes with a big afro and big, hoop earrings, told the officers that she is an attorney and had never been arrested before.

54. After checking her plate, the officers realized their mistake.

55. Ms. Perkins-Moore indicated that Texas and Michigan plates look nothing alike, and informed them that "contrary to what you believe, black people DO travel..."

56. Ms. Perkins-Moore asked the officers why she was stopped, and why they didn't ask for her license, registration and proof of insurance before pulling her over, stopping, detaining and handcuffing her.

57. Officer Vernon responded "We stopped you because we thought the car was stolen."

58. "You couldn't have stopped me because the "car was stolen" – there wasn't enough time for you to run the plate. The only reason you stopped me is because you saw this big afro. You'll be hearing from me."

59. The officers did not apologize and seemed to have taken the traffic stop as a joke.

60. Ms. Perkins-Moore had been gainfully employed at the 36th District Court as Public Defender, and had been accustomed to being around police officers all the time.

61. After the incident, Ms, Perkins-Moore has been unable to sleep, cries every time she sees a police car, began seeking alternative employment because she could not stop shaking and crying whenever she saw a Detroit police officer or police car.

62. Ms. Perkins-Moore also decided to stop wearing her Afro.

63. Ms. Perkins-Moore complained that the stop was racially motivated and complained that the manner in which she was spoken to and treated was with disdain, indicating, "how they looked at me, how they talked to me, and my experience of being Black for 65 years...I know racism when I see it."

64. Makeeba James, Investigator Jones, and William Bell each participated in the investigation, and each concluded that "The investigation revealed to facts to support that the incident complained of actually occurred."

65. As the direct and proximate result of each Defendant's acts and omissions, Plaintiff suffered injury and damage as more fully set forth below.

## COUNT I: GROSS NEGLIGENCE

66. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

67. Each Defendant owed Plaintiff a duty to perform their law enforcement duties competently without causing unnecessary injury or harm.

68. Each Defendant breached said duty by failing to properly investigate, providing false information, failing to provide exculpatory facts, failing to stop each other from knowingly providing false information and assaulting and battering him.

69. That each Defendant's conduct was so reckless as to demonstrate a substantial lack of concern as to whether or not an injury resulted, amounting to gross negligence as defined by MCL 691.1407 (2) et seq, MSA 3.996(107) et seq.

70. As the direct and proximate result of each Defendant's acts and omissions, Plaintiff suffered injury and damage as more fully set forth below.

## COUNT II: ASSAULT AND BATTERY

71. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

72. The Defendants did, during the course of their contact with Plaintiff, make an intentional, unlawful threat /offer to do bodily injury to Plaintiff by force, under circumstances which created in Plaintiff a well-founded fear of imminent peril, including the Defendants' apparent present ability to carry out the threat.

73. In addition, the Defendants, intentionally caused an unconsented touching of Plaintiff against her will without justification, or any basis in law or fact.

74. Defendants used more force than was reasonably necessary in arresting Plaintiff thereby committing an unlawful battery upon Plaintiff's person.

75. As a result of the Defendants' conduct, Plaintiff suffered the damages as set forth herein.

### COUNT III - FALSE ARREST AND IMPRISONMENT

76. Plaintiff realleges each preceding paragraph as if more fully stated herein.

77. Defendants caused Plaintiff to be arrested without probable cause.

78. Defendants caused Plaintiff to be arrested without any basis whatsoever in law or fact.

79. As the direct and proximate cause of Defendants' conduct Plaintiff suffered the damages set forth herein.

### COUNT IV: 42 USC 1983 AGAINST THE INDIVIDUAL DEFENDANTS 14th AM RACIAL ANIMUS/DENIAL OF EQUAL PROTECTION CLAUSE, DUE PROCESS, FAILURE TO INTERCEDE, UNREASONABLE SEARCH /SEIZURE, EXCESSIVE FORCE

80. Plaintiff realleges each preceding paragraph as if more fully stated herein.

81. Defendants Ross and Vernor stopped, detained, handcuffed, arrested and seized the Plaintiff based solely on her race and gender as an African American female.

9

82. Defendants were motivated by racial animosity, and without any articulable or reasonable suspicion, abused their authority in stopping, detaining, handcuffing and arresting Plaintiff.

83. Defendants Vernon and Ross had no probable cause to stop, detain, investigate or arrest Plaintiff, yet they did.

84. Defendants have a custom, policy, pattern and practice of treating similarly situated Caucasian drivers differently.

85. Defendants have a custom, policy, pattern and practice of treating other African American drivers similarly situated differently.

86. The actions of targeting, stopping and arresting Plaintiff, an African American woman, was the result of racial animus, intended to and had the effect of depriving her of the protection afforded by the Equal Protection Clause under the 14th Amendment.

87. The stop, detention, arrest and handcuffing of Plaintiff before determining the status of the driver and/or vehicle violated her rights to procedural due process in contravention of the Fourteenth Amendment.

88. By reason of their acts as set forth in the Complaint, the individual Defendants acted under color of state law and with oppression and malice to Plaintiff, to the deprivation of her rights, privileges and immunities secured by the Constitution and laws, to wit;

    a. The right to equal protection of the laws, free from racial profiling based on discriminatory intent, resulting in a discriminatory effect.

    b. the right not to be deprived of liberty or property without due process of law, as secured by 4th and 14th Amendments to the Constitution of the United States of America;

    c. The right to be free from excessive force, and to be secure in her person as provided by the 4th and 14th Amendments to the U.S. Constitution.

89. Defendants Vernon and Ross each had an affirmative duty to intervene and protect Plaintiff from the constitutional violations committed by their fellow officer.

90. Defendants Vernon and Ross each:

   a. Knew that excessive force was being used;

   b. Knew that Plaintiff had been unjustifiably stopped and detained;

   c. Knew that a constitutional violation has been committed by law enforcement officers;

   d. Had a realistic opportunity to intervene to prevent the harm from occurring and failed to do so.

91. Defendants' conduct was in accordance with the practice, usage, policy and procedures, and/or customs of their employer Defendant City of Detroit, said policies of deliberate indifference to Plaintiff's rights as secured under the U.S. Constitution.

92. As a direct and proximate result of the Defendants' conduct, Plaintiff suffered the damages as set forth herein.

### COUNT V: 42 USC 1983 AGAINST THE CITY OF DETROIT

93. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

94. The above-described conduct of the individual Defendants was performed under color of law while they were working as officers for Defendant City of Detroit.

95. Defendant officers' above-described conduct deprived Plaintiff of clearly established rights to: equal protection, due process, freedom from unlawful seizure, freedom from unreasonable restraint, freedom from unreasonable and excessive force.

96. Defendant City knew or should have known of these Defendants' propensity for such unconstitutional conduct.

97. Defendant City failed to safeguard against said known unconstitutional conduct and such failure amounted to a tacit approval of said conduct and Defendant City is directly liable for violation of Plaintiff's liberty, property and bodily interests, and right to be free from unreasonable and search, seizure, and excessive force.

98. Defendant City had a custom, pattern and/or practice of failing to take disciplinary action to correct or remedy the unlawful conduct of Defendant Officers and other officers who engaged in similar conduct.

99. Defendant City had a custom, pattern and/or practice of failing to supervise and/or train Defendant Officers and other Detroit police officers who engaged in similar conduct.

100. Defendant City has a long-standing custom, pattern and/or practice of demonstrating deliberate indifference to unreasonable, inadequate and deficient investigations, illegal searches and seizures and excessive force complained of against its officers.

101. Defendant City demonstrated deliberate indifference by the adherence to, application and interpretation of, and/or acquiescence in the following policies, customs, patterns and practices, which were wholly defective:

    a. failing to adequately screen active duty police officers and new recruits for propensities for abuses of power and psychological disturbances which could forseeably endanger citizens;

    b. tacitly approving an unwritten custom of failing to discipline officers who made unreasonable, inadequate and deficient investigations, illegal searches and seizures and employed excessive force;

    c. failing to adequately investigate complaints against officers who were claimed to have performed unreasonable, inadequate and deficient investigations, illegal or unreasonable searches and seizures and excessive force;

       d. failing to train officers regarding: proper investigation of crime under these circumstances, traffic stops, search, seizure and use of force.

102. Defendant City was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and was conscious of the risk of harm posed by the conduct of Defendant Officers.

103. The failure of Defendant City, under the circumstances, to properly supervise, train and/or discipline Defendant officers and officers who engaged in similar misconduct was objectively unreasonable and demonstrated a deliberate indifference to incidents and complaints against its officers, and deliberate indifference to the rights of persons such as Plaintiff.

104. As a direct and proximate result of the acts and omissions of Defendant City, Plaintiff suffered severe injury and damage as set forth herein.

## COUNT VI: SUPERVISORY LIABILITY AGAINST CHIEF CRAIG, INV. QUICK, INV. JAMES, INV. AKBAR, SGT. GASSAWAY-WALLS, LT. ATKINSON

105. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

106. Defendants Quick, James, Akbar, Gassaway-Walls and Atkinson, each while acting under color of law, by acts and omissions, did affirmatively subject Plaintiff to deprivation of his rights, privileges and immunities as secured by the Constitution of the United States as follows:

       a. The right to equal protection of the laws, free from racial profiling based on discriminatory intent, resulting in a discriminatory effect.

       b. the right not to be deprived of liberty or property without due process of law, as secured by 4th and 14th Amendments to the Constitution of the United States of America;

       c. The right to be free from excessive force, and to be secure in her person as provided by the 4th and 14th Amendments to the U.S. Constitution.

       d. Defendants Quick, James, Akbar, Gassaway-Walls and Atkinson, by engaging in, and/or explicitly and/or implicitly authorizing, approving

13

and/or knowingly acquiescing in unconstitutional conduct as set forth in this Complaint, did affirmatively subject Plaintiff to deprivation of his rights, privileges and immunities as secured by the U.S. Constitution.

107. The acts and omissions of Defendants were under color of law, and were in accordance with the practice, usage, policy and procedures, and customs of deliberate indifference to Plaintiff's rights as secured under the U.S. Constitution of the Defendant City.

108. As a direct and proximate result of the acts and omissions of each Defendant, Plaintiff suffered severe injury and damage as set forth herein.

### COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

109. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

110. Defendants individually and collectively by their extreme and outrageous conduct intentionally and/or recklessly caused Plaintiff severe emotional distress as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

111. As a direct and proximate result of Defendants' illegal, malicious, intentional conduct, Plaintiff suffered damages as more fully set forth below.

### DAMAGES

112. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

113. As the/a direct and proximate result of the conduct of Defendant, Plaintiff suffered injuries and damages, including, but not limited to:

    a. pain and suffering;

    b. Humiliation, embarrassment, shock, fear, outrage;

    c. Severe emotional distress; and mental injury;

    d. Loss of liberty;

  e. Medical expenses;

  f. Other economic injury;

  g. Other damages currently unascertainable;

  h. Exemplary damages and reasonable attorney fees, as provided by court rule and statutes, including but not limited to 42 USC 1988.

WHEREFORE Plaintiff requests that this court award damages for Plaintiff, and against Defendants in whatever amount Plaintiff is found to be entitled to in excess of Twenty-five Thousand ($25,000.00) Dollars, plus interest, costs and attorney fees. Plaintiff further requests an award for punitive and exemplary damages and such other and further relief as is consistent with law and which this Honorable Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

NOW COMES the Plaintiff, LINDA PERKINS-MOORE, by and through counsel, and hereby respectfully requests that the above-named civil action be heard before a jury.

Respectfully submitted,
The Michigan Law Firm, P.C.

/s/Racine M. Miller
By: Racine M. Miller (P72612)
Attorneys for Plaintiff
199 Pierce, Ste 202B
Birmingham, MI 48009
Ofc: (844) 464.3476
racine@themichiganlawfirm.com

Dated: March 8, 2021