UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA PERKINS-MOORE,

      Plaintiff,

v.                           Case Number 21-10929

CITY OF DETROIT, *ET AL.*,       Sean F. Cox
                                  United States District Court Judge

      Defendants.
_____/

**OPINION & ORDER**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On October 14, 2019, two police officers were out on patrol in the City of Detroit,

Michigan when the officer riding in the passenger seat ran Plaintiff's license plate through the

Law Enforcement Information Network ("LEIN"). That officer advised his partner that the

vehicle Plaintiff was driving was reported as stolen in the LEIN. The two officers then

conducted a brief *Terry* stop of Plaintiff's vehicle and Plaintiff was handcuffed outside her

vehicle for less than three minutes while the officers investigated. Upon realizing that a mistake

had been made, and that the vehicle reported as stolen was actually a Texas license plate (not a

Michigan plate), the officers removed the handcuffs and Plaintiff returned to her vehicle.

Plaintiff was upset about the incident, and filed a formal complaint against one of the officers,

alleging that she was stopped because of her race. An investigation concluded that Plaintiff's

allegation was unfounded. Thereafter, Plaintiff commenced this civil action, asserting federal

and state-law claims against the two officers that stopped her, along with their supervisors and

other officers, and the City of Detroit. The matter is currently before the Court on Defendants'

1

Motion for Summary Judgment.  The motion was heard on June 1, 2023.  For the reasons set forth below, the Court GRANTS the motion.

## BACKGROUND

On or about March 8, 2021, Plaintiff Linda Perkins-Moore filed suit against Defendants in Wayne County Circuit Court.  Defendants removed the matter to federal court, based upon federal-question jurisdiction over Plaintiff's federal claims, and they ask this Court to exercise supplemental jurisdiction over Plaintiff's state-law claims.

The action was originally assigned to the Honorable Stephanie Dawkins Davis, along with Magistrate Judge David Grand.  In September of 2021, the case was reassigned from Magistrate Judge Grand to Magistrate Judge Jonathan Grey, pursuant to Administrative Order Order 21-AO-025.  This action was then reassigned to this Court on June 16, 2022, after Judge Davis was sworn in as a judge on the United States Court of Appeals for the Sixth Circuit.

Both Magistrate Judge Grand and Magistrate Judge Grey addressed a number of issues during discovery and the scheduling order dates were extended several times.  After Magistrate Judge Grey was sworn in as a district court judge in this Court, the action was reassigned from him to Magistrate Judge Anthony Patti.  At the time of that transfer, a Motion for Summary Judgment was pending on the docket.  This Court withdrew the reference to the magistrate judge, so that it could directly address the summary judgment motion.

At this juncture, discovery has closed and the operative complaint is Plaintiff's Amended Complaint.  (ECF No. 5).  In it, Plaintiff asserts claims against the City of Detroit, along with claims against the following individuals employed by the City of Detroit Police Department, who are sued in their individual and official capacities: 1) Chief James Craig; 2) Samuel Quick; 3)

2

Makeeba James; 4) Lawrence Akbar; 5) Debra Gassaway-Walls; 6) Geraldine Atkinson, 7)

Timothy Verson; and 8) Donald Ross.  Plaintiff's Amended Complaint asserts the following

counts: 1) "Gross Negligence" (Count I); 2) "Assault and Battery" (Count II); 3) "False Arrest

and Imprisonment" (Count III); 4) a § 1983 claim against "The Individual Defendants" (Count

IV); 5) a municipal § 1983 count against the City of Detroit (Count VI); 6) "Supervisory Liability

Against Chief Craig," and other officers (Count VI); and 7) "Intentional Infliction Of Emotional

Distress" (Count VII).

     The matter is currently before the Court on Defendants' Motion for Summary Judgment.

(ECF No. 70).

     This Court's practice guidelines provide, consistent with Fed. R. Civ. P. 56 (c) and (e),

that:

> a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

> b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

> c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 2-3).

     Defendants complied with the Court's practice guidelines for summary judgment motions

such that their motion includes a "Statement of Material Facts Not In Dispute" ("Defs.' Stmt.") (ECF No. 20) and Plaintiff included a "Counter-Statement of Disputed Facts" (Pl.'s Stmt.") (ECF No. 23).

Ordinarily, this Court views the facts in the light most favorable to Plaintiff, the nonmoving party. *Jackson v. Wilkens*, 517 F. App'x 311, 314 (6th Cir. 2013). Here, however, there is video/audio recordings that capture most, but not all, of the incident at issue. Thus, the Court views the facts in the light most favorable to Plaintiff, unless the video evidence blatantly contradicts her testimony. *Id*.; *Cunningham v. Shelby Cty*., 994 F.3d 761, 763 (6th Cir. 2021).

**The Parties**

At all relevant times, Defendants Timothy Vernon ("Vernon") and Donald Ross ("Ross") were employed as police officers with the City of Detroit's Police Department. (Pl.'s Stmt. & Defs.' Stmt. at ¶ 1). Vernon and Ross are the only named Defendants who participated in the vehicle stop of Plaintiff's vehicle.

At the time of the incident, Vernon had been an officer with the Detroit Police Department for several years. (Vernon Dep. at 6).

Ross joined the City of Detroit's Police Department in early 2019. (Ross Dep. at 8-9). Ross was certified to be a police officer. (*Id*. at 10). Ross received training and passed a LEIN certification test on January 9, 2019. (*See* ECF No. 70-3 & ECF No. 81-1).

Defendant James Craig was the Chief of Police at the time of the incident. Defendants Quick, James, and Akbar were investigators with the Detroit Police Department at the time of the incident. Defendants Gassaway-Wells and Atkinson are identified as the supervisors of Defendants Vernon and Ross.

4

**The Vehicle Stop**

Plaintiff is an African-American woman. Plaintiff is an attorney and, at the time of the incident, she had been working as "house counsel" in the traffic department at the 36th District Court in Detroit, Michigan. (Pl.'s Dep. at 6). On the date of the incident, October 14, 2019, Plaintiff was driving her vehicle, a Mercedes Benz, in Detroit, Michigan.

Officers Vernon and Ross were out on patrol and were riding together in the same patrol car, with Vernon driving and Ross in the passenger seat. (Vernon Dep. at 9-10). While on patrol, Ross ran the license plate of Plaintiff's vehicle using the LEIN. (Pl.'s Stmt. & Defs.' Stmt. at ¶ 2). It is undisputed that Plaintiff's vehicle was in plain sight, out on a public roadway at this time. (*Id.*)

Vernon testified that, while out on patrol, and not engaged in responding to service calls, officers will run license plate checks of vehicles that are out in plain view. Doing that sometimes allows officers to find stolen cars, find vehicles being operated without insurance, or find open arrest warrants for the drivers of vehicles. (Vernon Dep. at 12-13).

Ross testified that when he ran Plaintiff's license plate number, it appeared to him that the vehicle had been reported as stolen. (Ross Dep. at 55-56). Ross testified that he believed the vehicle Plaintiff was driving was a stolen vehicle, based on the LEIN check of the license plate. (*Id.*). Ross advised Vernon that Plaintiff's vehicle was reported as stolen in the LEIN. (Vernon Dep. at 10). Vernon, who was driving at the time, then activated the patrol car's overhead lights and came up behind Plaintiff's vehicle. (Vernon Dep. at 10).

Plaintiff testified that the officers also instructed her, via a loud speaker, to pull off the street into a parking lot. Plaintiff testified that she did not comply with that directive from the

patrol car because she feared the police officers and she wanted the stop to occur "on the street where people can see me, because I was fearful." (Pl.'s Dep. 11, 13-14 & 30). Plaintiff testified that she could not understand why "they were pulling me over, except for the fact that I had on large hoop earrings and a big afro." (Pl.'s Dep. at 14).

The vehicle stop was captured on video and audio recordings. Those recordings reflect that after Plaintiff pulled her vehicle over on the side of the road, Officer Vernon approached her at the driver's side of the vehicle. At first, there is no audio on the recordings. But Officer Vernon is seen speaking to Plaintiff and he has her exit the vehicle. (Def.'s Ex. B).

Plaintiff testified that she exited her vehicle at the officer's request. (Pl.'s Dep. at 18). One of the officers told Plaintiff that the car she was driving had been reported as stolen. (Pl.'s Dep. at 20).

After Plaintiff exited her vehicle, Officer Vernon handcuffed Plaintiff, with the handcuffs placed in the front of Plaintiff's body. (Pl.'s Dep at 19, Def.'s Ex. B). Plaintiff said, "I cannot believe this" and Officer Vernon asked her to stand in front of the patrol car's dashcam. (*Id.*).

Officer Ross then returned to the inside of the patrol car, while Plaintiff remained handcuffed and standing in front of the patrol car with Vernon. Ross is seen working on the computer inside the patrol car. Officer Ross then exited the patrol car and asked Plaintiff her first and last name and Plaintiff responded "Linda Perkins-Moore." Ross then stated to Vernon that the vehicle was registered to Plaintiff.

Within minutes, Officer Vernon, upon further investigation, determined that the LEIN hit was for a Texas license plate, not a Michigan license plate. (Stmts. at ¶ 5). Upon realizing the mistake, Officer Vernon removed the handcuffs from Plaintiff and Plaintiff returned to her

vehicle.  (Pl.'s First Am. Compl. at ¶ 35; Defs.' Ex. B).

The video and audio recordings reflect that Plaintiff was handcuffed for a total of less than three minutes.  (Defs.' Ex. B).

The recordings reflect that Plaintiff was upset about having been stopped, used unsavory language with the officers, and requested their names and badge numbers, which were provided to Plaintiff.

**Plaintiff's Citizen Complaint**

After the vehicle stop, Plaintiff lodged a citizen complaint against Officer Vernon, asserting that he stopped Plaintiff's vehicle on October 14, 2019, because of Plaintiff's race. Plaintiff alleges that James, Jones, and Bell "each participated in the investigation, and each concluded that 'The investigation revealed [n]o facts to support that the incident complained of actually occurred.'" (Pl.'s First Am. Compl. at ¶ 64).

In support of Defendants' summary judgment motion, they submitted a copy of the written memorandum of Plaintiff's citizen complaint.  (*See* Defs.' Ex. D, ECF No. 70-4).  It reflects that Investigator James: 1) conducted an in-person interview with Plaintiff on January 16, 2020; 2) conducted an in-person interview with Officer Vernon[1] on January 29, 2020; and 3) reviewed video and audio recordings of the incident.  After the investigation concluded, Plaintiff's allegation that Officer Vernon stopped her because of her race was found to be unfounded.  (Defs.' Ex. D; James Dep. at 7-8).

---

[1]Officer Ross resigned from the Detroit Police Department on January 2, 2020. (ECF No. 70-4 at PageID.1048).

**Plaintiff's Claims In This Case**

The operative complaint is Plaintiff's First Amended Complaint.  (ECF No. 5).  In it, Plaintiff asserts a municipal liability claim against the City of Detroit (Count V), along with official capacity claims against Defendant Craig and others.  All of the official capacity claims are simply duplicative municipal liability claims against the City.  *See, e.g., Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989).  It also includes Count VI, titled "Supervisory Liability."

As to several claims, Plaintiff's First Amended Complaint does not specify which Defendant or Defendants those claims are asserted against – instead alleging that "Defendants" engaged in the conduct at issue.  At the June 1, 2023, hearing, Plaintiff's counsel advised the Court that Plaintiff's assault and battery, false arrest and imprisonment, and intentional infliction of emotional distress claims are asserted against Defendants Vernon and Ross only.  She further stated that the gross negligence count is not actually a claim, but rather, was included to plead in avoidance of governmental immunity.

Plaintiff's § 1983 count (Count IV) is asserted against the "individual Defendants," who are identified in that count as Vernon and Ross.  (Pl.'s First Am. Compl. at 12-14).  And that is in accord with Plaintiff's response to the qualified immunity challenge in the pending motion – as Plaintiff only addresses the issue of qualified immunity as it related to Defendants Vernon and Ross.  (*See* Pl.'s Br. at 17-20).

8

**STANDARD OF DECISION**

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In reviewing Defendants' summary judgment motion, this Court must view all facts and inferences in the light most favorable to Plaintiff, the nonmoving party. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001).

"When videotape footage exists," however, "the reviewing court need not credit the version of the party who asserts facts 'blatantly contradicted' by the videotape; rather it should view the facts in the light depicted by the videotape.*" Cunningham v. Shelby Cty.*, 994 F.3d at 763 (citing *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)); *see also Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015).

**ANALYSIS**

**I.    Are Defendants Vernon And Ross Entitled To Qualified Immunity As To Plaintiff's § 1983 Claims Against Them?**

Plaintiff has asserted § 1983 claims against Defendants Vernon and Ross, who were sued in their individual capacities. Defendants contend that they are entitled to qualified immunity.

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008). Determining

whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation.

"[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994). Here, Defendants have raised the issue in the context of a summary judgment motion.

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

It is well established that "damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did that violated the asserted constitutional right." *Lanman,* 529 F.3d at 684; *Terrance,* 286 F.3d at 842. "Each defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

The first step in the qualified immunity analysis is to consider whether, viewing the facts in the light most favorable to Plaintiff, Plaintiff could establish a Constitutional violation with respect to either of these two officers.

Although the title of Plaintiff's § 1983 count asserted against Vernon and Ross included a smattering of constitutional references, Plaintiff's response to the pending summary judgment motion addresses her § 1983 claim as being a claim based upon: 1) the officers having run her

license plate through the LEIN system without probable cause for doing so; and 2) having

stopped Plaintiff's vehicle without probable cause for doing so.  (*See* Pl.'s Br. at 8-20 & 28).

But it also includes assertions in the sections that address her assault and battery claim, and her

false imprisonment claim, that lead this Court to believe she may be asserting a federal

excessive-force claim or false arrest claim too.

> **A.**     **Unlawful Search By Virtue Of Running LEIN Check Of Plaintiff's License Plate**

Defendants' motion notes that Plaintiff is attempting bring a § 1983 claim against

Defendants Vernon and Ross "for using the Law Enforcement Information Network (LEIN)

system to run the Plaintiff's license plate when they had no probable cause or reasonable

suspicion to run the plate," and assert that the caselaw is clear that such conduct is constitutional.

(Defs.' Br. at 8).

In response, Plaintiff continues to take the position that it is unlawful for police officers to

use the LEIN to run a license plate check of a vehicle unless the officers have probable cause or

reasonable suspicion that an offense has been committed.  (*See* Pl.'s Br. at 8).

To the extent that Plaintiff alleges that the officers' LEIN check of her license plate was a

warrantless search that violated her Fourth Amendment rights, that claim fails.  It is well-

established that a police officer's check of a vehicle's license plate in a database such as the

LEIN is not a Fourth Amendment search.  *See, eg., United States v. Ellison*, 462 F.3d 557, 563

(6th Cir. 2006); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 529 (5th Cir. 1999); *United

States v. Diaz-Castaneda,* 494 F.3d 1146, 1150 (9th Cir. 2007); *United States v. Miranda-

Sotolongo*, 826 F.3d 663, 667-68 (7th Cir. 2016).  That is because such a license plate check

involves only checking *publicly displayed license plate information* against official public records. *Ellison,* 462 F.3d at 561. Indeed, "the very purpose of a license plate number" "is to provide identifying information to law enforcement officials and others." *Id*. And the "obvious purpose of maintaining law enforcement databases," such as the LEIN system, is to make information such as the existence of outstanding warrants, stolen vehicles, and unregistered vehicles, "readily available" to law enforcement officers. *Id*. Accordingly, so long as an officer has a right to be "is in a position to observe" a vehicle's license plate, "any such observation and corresponding use of the information on the plate does not violate the Fourth Amendment." *Id.* at 563.

Here, the officers observed Plaintiff's license plate out in public, while on patrol in Detroit, Michigan. As such, their actions in running a check of Plaintiff's license plate through the LEIN system is not a search for purposes of the Fourth Amendment. This claim fails as to both Vernon and Ross.

**B.    Lack Of Probable Cause For The Vehicle Stop**

Plaintiff also takes the position that her constitutional rights were violated because Officers Vernon and Ross lacked probable cause to stop her vehicle on the date in question.

Police officers may briefly stop an individual for investigation if they have a "reasonable suspicion" that the individual has committed a crime. *Houston v. Clark Cnty. Sheriff Deputy John Does 1-5,* 174 F.3d 809, 813 (6th Cir. 1999) (citation omitted). "The same Fourth Amendment test applies to vehicle stops." *Id.* (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). As explained by the Sixth Circuit:

"Reasonable suspicion" is more than an ill-defined hunch; it must be based upon

12

> "a particularized and objective basis for suspecting the particular person ... of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). It requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" an investigatory stop. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir.1998), *cert. denied*, 525 U.S. 1123, 119 S.Ct. 906, 142 L.Ed.2d 904 (1999).

*Houston*, 174 F.3d at 813.  Thus, "[t]he standard outlined in *Terry* and its progeny is not onerous."  *Id*.  " Moreover, reasonable suspicion can arise from evidence that is less reliable than what might be required to show probable cause. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *McPherson*, 125 F.3d at 993."  *Id*.

Viewing the totality of the circumstances they were presented with, both Ross and Vernon possessed a reasonable suspicion – though to be sure a mistaken one – that the vehicle Plaintiff was driving had been reported as stolen in the LEIN.

Vernon was driving the patrol car when Ross advised him that Plaintiff's vehicle was reported as stolen in the LEIN.  (Vernon Dep. at 10).  Vernon then activated the patrol car's overhead lights, came behind the vehicle, and stopped it for investigation. Vernon was acting pursuant to information relayed to him by Officer Ross and he reasonably believed his partner's verbal report that the vehicle being driven by Plaintiff was shown as a stolen vehicle in the LEIN. An officer may formulate reasonable suspicion based on such information relayed by fellow officers*. See Houston, supra*, at 814; *McPherson v. Kelsey*, 125 F.3d 989, 993-94 (6th Cir. 1997).  Vernon is therefore entitled to qualified immunity on this claim.

The same is true for Ross, the officer who made the mistake.  After entering Plaintiff's license plate number into the LEIN, Ross reasonably believed that the vehicle had been reported as stolen because Plaintiff's license plate number matched the license plate number of a vehicle

reported as stolen.  As illustrated in *Houston*, a mistaken premise can furnish grounds for a *Terry*

stop if an officer acted reasonably upon it.  *Houston*, 174 F.3d 809 at 814; *see also United States*

*v. Shareef*, 100 F.3d 1491, 1505 (10th Cir. 1996) ("'A mistaken premise can furnish grounds for

a *Terry* stop, if the officers do not know that it is mistaken and are reasonable in acting upon

it.'") (quoting *United States v. Ornelas-Ledesma*, 16 F.3d 714, 718 (7th Cir. 1994)).  Ross did

not stop Plaintiff's vehicle "because of a hunch," but rather based on reasonable and articulable

facts and inferences drawn reasonably (but incorrectly) therefrom.  Although Plaintiff was

admittedly innocent, "*Terry* accepts the risk that officers may stop innocent people" such as

Plaintiff.  *Illinois v. Wardlow*, 528 U.S. 119, 126 (2000).

### C.     False Arrest And Imprisonment

Count III of Plaintiff's First Amended Complaint asserts a separate count for false arrest

and imprisonment.

Defendants argue that they are entitled to summary judgment as to that count, asserting

that there is no viable claim for false arrest and imprisonment as there was no arrest and the

officers had a reasonable suspicion to conduct an investigative *Terry* stop.  (Defs.' Br. at 18).

False arrest and imprisonment claims can be brought under either federal or state law.

*Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005).  It was unclear from

Plaintiff's pleading whether she intended to assert Count III under federal or state law.  But her

response brief reflects that she seeks to pursue this as a federal claim, as it only addresses federal

law.[2]  (*See* Pl.'s Br. at 23-26).

---

[2]The claim, however, would not fare any better if it had been asserted under Michigan
law.  *Bletz v Gibble*, 641 F.3d 743, 748 (6th Cir. 2011).

14

To the extent that Plaintiff asserts that the investigative stop ripened into an arrest that required probable cause that Plaintiff had committed a crime, that claim fails.

"An investigative *Terry* stop may indeed ripen into an arrest through the passage of time or the use of force." *Houston*, 174 F.3d at 814 (citations omitted). "When this occurs, the continued detention of suspects must be based upon probable cause." *Id.* Although there is no "bright line that distinguishes an investigative stop from a *de facto* arrest," the length and manner of an investigative stop "should be reasonably related to the basis for the initial intrusion." *Id.*

Applying these standards, there was no Fourth Amendment violation by Officers Vernon or Ross. As set forth above, the officers had reasonable suspicion to stop Plaintiff's vehicle, believing that it had been reported as stolen in the LEIN. The officers did not draw their weapons or place Plaintiff in their patrol car. Rather, after stopping Plaintiff's vehicle, the officers briefly handcuffed Plaintiff, for less than three minutes, while they investigated. The circumstances presented (i.e., reasonable suspicion that the vehicle was reported as stolen) justified the brief use of the handcuffs for officer safety. And the short length of the stop certainly did not exceed the permissible scope of a *Terry* stop.

### D. Excessive Force / Assault And Battery

Plaintiff's § 1983 excessive force claims against either Vernon and Ross fail too. The only officer who touched Plaintiff at all during the incident was Officer Vernon, who applied the handcuffs and then removed them less than three minutes later.

Plaintiff does not allege, or assert at this summary judgment phase of the case, that the handcuffs were too tight. And even if she did, such a claim would fail at this summary judgment phase of the case based upon the record before this Court. "In order for a handcuffing claim to

15

survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Morrison v. Board of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009); *Hughey v. Easlick*, 3 F.4th 283, 289 (6th Cir. 2021).

Here, it is undisputed that Plaintiff never complained about the handcuffs being too tight during the less than three minutes she was handcuffed. And Plaintiff's counsel conceded at the hearing that Plaintiff did not experience any physical injury from the handcuffs.

Accordingly, Defendants Vernon and Ross are entitled to qualified immunity as to Plaintiff's excessive force claims.

## II.    Plaintiff's "Supervisory Liability Count"

Count VI of Plaintiff's First Amended Complaint is titled "Supervisory Liability" and references former Chief Craig, along with Quick, James, Akbar, Gassaway-Walls, and Atkinson.

Defendants' motion asserts that there is no basis for any supervisory claim in this case and asks the Court to dismiss this count, asserting:

> Government officials may not be held liable under § 1983 for the unconstitutional conduct of their subordinates under the theory of respondeat superior; in other words, a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another. 42 U.S.C.A. § 1983. Further, **a supervisory official's failure to supervise, control or train the offending individual is not actionable under § 1983 unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it**. 42 U.S.C.A. § 1983. As part of the supervisory liability inquiry under § 1983, a court considers whether there is a causal connection between the defendant's wrongful conduct and the violation alleged. 42 U.S.C.A. § 1983. *Peatross v. City of Memphis*, 818 F.3d 233 (2016).
> First, there was no misconduct of any of the officers or investigators.

16

Assuming, that there was however, the Plaintiff claims still fails because of the named supervisors did not encourage the alleged specific incident or directly participated in the alleged misconduct.

(Defs.' Br. at 23-24) (emphasis in original).

In responding to this challenge, Plaintiff only addresses this count in relation to Defendant Atkinson.  (Pl.'s Br. at 28-29).  Plaintiff asserts that Atkinson was the supervisor of Vernon and Ross on the date of the incident.  Plaintiff appears to ask the Court to hold Atkinson liable for Vernon and Ross's alleged constitutional violation of having entered Plaintiff's license plate number into the LEIN without probable cause.  This argument goes nowhere because, as explained above, it is well established that a police officer's check of a vehicle's license plate in a database such as the LEIN system is not a Fourth Amendment search.  Defendants are entitled to summary judgment as to Count VI.

### III.   Plaintiff's Municipal Liability Count

Count V of Plaintiff's First Amended Complaint asserts a municipal liability claim against the City of Detroit, seeking to hold it liable for the alleged constitutional violations committed by Officers Vernon and Ross.  As explained above, those claims fail.

Because Plaintiff has no viable underlying constitutional claim against either Officer Vernon or Officer Ross, the City is entitled to summary judgment on this municipal liability count.  *See, eg., S.L. ex rel. K.L. v. Pierce Twp. Bd. of Trustees*, 771 F.3d 956, 962 (6th Cir. 2014). (Where no underlying constitutional violation occurred, district court did not err in granting summary judgment on municipal liability claim.).  That is because there can be no municipal liability where there is no underlying constitutional violation.

17

IV.     **Gross Negligence (Count I)**

Count I of Plaintiff's Amended Complaint is a "Gross Negligence" claim that is asserted

against "Each Defendant" without identifying the names of any of the eight individuals who are

named as Defendants in this case and who are sued in their individual capacities.  (Pl.'s Am.

Compl. at 10).  This count alleges that:

> 67.    Each Defendant owed Plaintiff a duty to perform their law enforcement
> duties competently without causing unnecessary injury or harm.
>
> 68.    Each Defendant breached said duty by failing to properly investigate,
> providing false information, failing to provide exculpatory facts, failing to
> stop each other from knowingly providing false information and assaulting
> and battering him [sic].

(*Id*).

As all parties acknowledge, Michigan's Governmental Tort Liability Act ("GTLA") bars

ordinary negligence claims against governmental employees such as these Defendant officers.

Under Michigan law, an officer is immune from tort liability if three conditions are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes
> he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a
> governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount
> to gross negligence that is the proximate cause of the injury or damage.

*Hyman v. Lewis*, 27 F.4th 1233, 1238 (6th Cir. 2022); Mich. Comp. Laws § 691.1407(2).

"Gross negligence" is defined under the Act as "conduct so reckless as to demonstrate a

substantial lack of concern for whether an injury results."  Mich. Comp. Laws § 691.1407(8)(a).

Defendants' motion asserts that there is no viable gross negligence claim against any of

18

the individual Defendants in this case.  (Defs.' Br. at 15).  In challenging this count, Defendants

note that "Plaintiff does not set forth under her gross negligence claim what she alleges each

individual Defendant did that was grossly negligent." (*Id*. at 16).  Defendants contend they are

entitled to summary judgment as to this claim, explaining:

> *No Defendant did any of the activities alleged in paragraph 68.*  Per the facts of
> this case, absolutely no Defendant acted so recklessly to demonstrate a substantial
> lack of concern for whether an injury resulted.  Defendant Officer Ross, who was
> still in on duty training, made a simple mistake in reading the computer readout.
> The individual who investigated Plaintiff's claims followed through on the
> investigation based on the interview with the Plaintiff which, like the deposition
> of the Plaintiff, focused on concerns of racism.  There is no question of fact that
> Plaintiff's claim for gross negligence fails and summary judgment must be
> granted.

(*Id*.) (emphasis added).

In response to Defendants' properly-supported challenge, Plaintiff fails to respond to

Defendants' assertion that there is no evidence to support that any of the Defendants did the

things that are alleged in this Gross Negligence Count.  Rather, Plaintiff simply restates basic

principles that relate to gross negligence claims under Michigan law, without identifying the

Defendant or Defendants against whom this count is asserted, and without directing the Court to

the evidence that would support a gross negligence claim against each of the eight Defendants

named in this case.

As such, Defendants' Reply Brief notes that "Plaintiff, in fact, does not make any real

argument that any of the Defendants' conduct" reaches the required threshold to support a gross

negligence claim under Michigan law.  (Defs.' Reply Br. at 5).

The Court grants summary judgment in favor of Defendants as to Plaintiff's gross

negligence claim.  No reasonable jury could find the actions of Officers Ross (in making a simple

mistake in reading the LEIN information) or Vernon (in conducting a brief *Terry* stop based on information verbally relayed to him by his partner) to be "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." And by not addressing this claim as to any other named Defendants in her brief, Plaintiff has abandoned any gross negligence claim against any other officers.

## V.    Assault And Battery

Count II of Plaintiff's First Amended Complaint asserts a state-law assault and battery claim against Defendants Vernon and Ross. As to this claim, both parties direct this Court to *Moher v. United States*, 875 F. Supp.2d 739 (W.D. Mich. 2012). Plaintiff's brief asserts:

> Generally, under Michigan law a police officer may use such force as is reasonably necessary to perform his official duties such as, for example, making an arrest or subduing a person suspected of committing a crime, and if a police officer uses force that is objectively reasonable under the circumstances, the officer's actions are justified and he does not commit an assault and battery; however, if a police officer uses excessive force or more force than is reasonably necessary, his conduct is not justified, that is, not objectively reasonable, and he may be individually liable for assault and battery. *Moher v. United States*, 875 F. Supp. 2d 739 (W.D. Mich. 2012).

(Pl.'s Br. at 21).

As explained above, Officers Vernon and Ross had a reasonable suspicion that the vehicle Plaintiff was driving had been reported as stolen, that permitted them to conduct a *Terry* stop, and neither officer used more force than was necessary during that brief *Terry* stop. The Court grants summary judgment in favor of Defendants as to Plaintiff's assault and battery count.

## VI.    Intentional Infliction Of Emotional Distress

Count VII of Plaintiff's Amended Complaint asserts a claim for intentional infliction of emotional distress against unspecified "Defendants" alleging that "Defendants individually and

collectively" caused her to suffer severe emotional distress.  (Am. Compl. at 18).  But at the hearing, Plaintiff's counsel advised the Court that this claim is only asserted against Defendants Vernon and Ross.

To establish a claim of intentional infliction of emotional distress ("IIED") under Michigan law, a plaintiff must prove: 1) extreme and outrageous conduct; 2) intent or recklessness; 3) causation; and 4) severe emotional distress.  *Courser v. Michigan House of Representatives*, 831 F. App'x 161, 182-83 (6th Cir. 2020); *Brent v. Wayne Cnty. Dep't of Human Svs.*, 901 F.3d 656, 678) (citations omitted).  "Such conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Jones v. Muskegon Cty.*, 625 F.3d 935, 948 (6th Cir. 2010 (quoting *Graham v. Ford*, 237 Mich.App. 670 (1999)).  A defendant is not liable for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Watkins v. City of Southfield*, 221 F.3d 883, 890 (6th Cir. 2000) (citations omitted).  "Hence, a plaintiff will only be able to recover for intentional infliction of emotional distress 'in the most egregious of cases.'" *Id.*

Defendants contend that they are entitled to summary judgment as to this count because Plaintiff cannot establish these elements.

Again, Plaintiff asserts this claim against the two officers who stopped Plaintiff's vehicle (Vernon and Ross).  (*See* 6/1/23 Hrg. Tr.; Pl.'s Br. at 31) (arguing that activating emergency lights, stopping Plaintiff and "standing an innocent attorney in the public roadway in handcuffs during rush hour" is sufficiently severe to support an IIED claim under Michigan law).

Plaintiff cannot establish the requisite extreme and outrageous behavior by either Vernon

or Ross.  No reasonable jury could find that the actions of these two officers, in stopping

Plaintiff's vehicle and detaining her in handcuffs for less than three minutes, while they

investigated whether the vehicle she was driving was the vehicle reported as stolen in the LEIN,

is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

community."  *See e,g., Watkins,* 221 F.3d at 890*; Mertins v. City of Mount Clemens*, 817 F.

App'x 126, 132 (6th Cir. 2020).  The Court grants summary judgment in favor of Defendants as

to this count.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendants' Summary Judgment

Motion is GRANTED and this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  June 15, 2023

22